Nos. 11-56944, 11-57002, 12-55064

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN URBINO, for himself and on behalf of other current and former employees, *Plaintiff-counter-defendant – Appellee/Cross-Appellant*, <br><br> v. <br><br> ORKIN SERVICES OF CALIFORNIA, INC., a Delaware corporation; ROLLINS, INC., *Defendants-counter-claimants – Appellants/Cross-Appellees.* | Nos. 11-56944, -57002 <br><br> D.C. No. 2:11-cv-06456-CJC-PJW U.S. District Court for Central California, Los Angeles |
| JOHN URBINO, for himself and on behalf of other current and former employees, *Plaintiff-counter-defendant – Appellant*, <br><br> v. <br><br> ORKIN SERVICES OF CALIFORNIA, INC., a Delaware corporation; ROLLINS, INC., *Defendants-counter-claimants – Appellees.* | No. 12-55064 <br><br> D.C. No. 2:11-cv-06456-CJC-PJW U.S. District Court for Central California, Los Angeles |

## PETITION FOR REHEARING EN BANC

John E. Lattin
FISHER & PHILLIPS LLP
2050 Main Street, Suite 1000
Irvine, CA 92614
(949) 851-2424

Christopher C. Hoffman
FISHER & PHILLIPS LLP
4747 Executive Drive, Suite 1000
San Diego, CA 92121-1095
(858) 597-9600

Robert N. Hochman
Theodore R. Scarborough
Tacy F. Flint
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000

*Attorneys for Orkin Services of California, Inc. and Rollins, Inc.*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Appellee Orkin Services of California, Inc. is a wholly owned subsidiary of

Orkin, LLC, a Delaware limited liability company whose sole member/manager is

Appellee Rollins, Inc., which is a publicly held corporation.  No other publicly

held corporation owns 10 percent or more of the stock of Rollins, Inc.

## TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT.....................................i

TABLE OF AUTHORITIES. ................................................................iii

PETITION FOR REHEARING EN BANC ............................................1

INTRODUCTION .........................................................................4

    A.    Statutory Background...........................................................4

    B.    The Complaint and Removal Proceedings...........................7

    C.    The Panel Ruling ...............................................................9

REASONS FOR GRANTING THE PETITION.....................................10

    THE PANEL'S INTERPRETATION RENDERS PAGA, AS
    CONCLUSIVELY INTERPRETED BY THE CALIFORNIA
    SUPREME COURT, UNCONSTITUTIONAL...........................................10

CONCLUSION .......................................................................17

CERTIFICATE OF COMPLIANCE PURSUANT TO CIRCUIT
RULE 40-1 ..........................................................................18

CERTIFICATE OF SERVICE .........................................................19

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Amalgamated Transit Union, Local 1756 v.*
   *Superior Court*, 46 Cal. 4th 993 (2009)......................................................*passim*

*Arias v. Superior Court*,
   46 Cal. 4th 969 (2009) ................................................................*passim*

*Caliber Bodyworks, Inc. v. Superior Court*,
   134 Cal. App. 4th 365 (2005) ............................................................4

*Grannis v. Ordean*,
   234 U.S. 385 (1914)......................................................................11

*Hansberry v. Lee*,
   311 U.S. 32 (1940)....................................................................2, 11

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)..................................................................2, 11

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)......................................................................11

*Snyder v. Harris*,
   394 U.S. 332, 339 (1969).................................................................9

*Taylor v. Sturgell*,
   553 U.S. 880 (2008).................................................................2, 11

### STATUTES

28 U.S.C. § 1332(a)(1)......................................................................2

California Labor Code Private Attorneys General Act of 2004 ("PAGA"),
   California Labor Code § 2698 *et seq*.............................................*passim*

California Labor Code § 226 ...........................................................7, 8

California Labor Code § 558(a)(2) ........................................................8

California Labor Code § 1197.1(a)(2) ......................................................................8

**OTHER AUTHORITIES**

Fed. R. App. P. 35 ...............................................................................................1

## PETITION FOR REHEARING EN BANC

Pursuant to Fed. R. App. P. 35, Orkin Services of California, Inc. and Rollins, Inc. petition for rehearing en banc. The opinion of the panel majority conflicts with decisions of the U.S. Supreme Court and raises fundamental questions of national importance regarding whether a state may empower an individual party conclusively to resolve the individual rights of other private parties without providing them notice or opportunity to be heard.

California law provides the State Labor and Workforce Development Agency ("LWDA") with the authority to enforce the requirements of its Labor Code through lawsuits that seek to impose civil penalties. When the LWDA successfully presses such a public action, it is paid a single penalty, calculated employee-by-employee and incident-by-incident.

In 2004, California authorized private individuals to stand in the shoes of the LWDA and enforce the Labor Code through a suit seeking civil penalties, if the LWDA declined to initiate its own enforcement action. *See* California Labor Code Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2698 *et seq*. In such a PAGA suit, the amount of the penalty is calculated the same as if the suit were brought by the LWDA. And the effect of the suit is the same as if it were brought by the LWDA: the suit finally determines civil penalties for the entire class of employees who were the subject of the action. *Arias v. Superior*

*Court*, 46 Cal. 4th 969, 986 (2009). Thus, according to a binding decision of the California Supreme Court, if an individual employee brings a suit for civil penalties under PAGA and loses, neither the LWDA nor any other individual employee may later sue for civil penalties.

This case is an individual PAGA suit brought by a former employee of Orkin Services of California. A divided panel ruled that there was no federal jurisdiction because this suit, involving parties of diverse citizenship, did not satisfy the amount in controversy requirement. There was no question that the total amount of civil penalties that were placed in controversy by the suit exceeded the $75,000 threshold for jurisdiction under 28 U.S.C. § 1332(a)(1). But the panel ruled that each employee possesses a separate and distinct individual right to the amount of civil penalties attributable to the alleged violations concerning him or her in a PAGA suit. As a result, the panel considered only the potential penalties attributable to the individual plaintiff's employment history, which fell below the jurisdictional amount.

The panel's decision places PAGA in conflict with fundamental principles of due process long recognized by the Supreme Court in decisions such as *Hansberry v. Lee*, 311 U.S. 32 (1940), *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) and *Taylor v. Sturgell*, 553 U.S. 880 (2008). If, as the panel has concluded, each employee possesses an individual right to civil penalties

2

for Labor Code violations concerning him or her, then PAGA—as it has been conclusively interpreted by the California Supreme Court—violates due process because it allows a PAGA suit by one private party to extinguish the rights of all other employees without notice and opportunity to be heard.

The panel's decision thus thrusts PAGA into grave constitutional doubt. The California courts have spoken in clear and unmistakable terms: an individual suit pursuant to PAGA is no different from an enforcement action by the LWDA, except that it is a suit between private parties. The individual plaintiff initiating a PAGA action does not assert his or her own personal right, but rather the collective right of the state to enforce the Labor Code and to collect penalties for all violations; for that reason, one PAGA claim against a particular employer forecloses other potential PAGA plaintiffs' claims against that employer. The amount in controversy is, therefore, the total amount of civil penalties that the claim places at issue. This Court should review this case en banc to correct the panel majority's erroneous reading of PAGA, which causes that statute to flout fundamental due process principles. The en banc Court should instead rule that, consistent with the binding statements of the California Supreme Court, a PAGA claim asserts a single, undivided interest.

## INTRODUCTION

### A.    Statutory Background

The Labor Code Private Attorneys General Act of 2004 allows "aggrieved employees" to act "as the proxy or agent of the state's labor law enforcement agencies" and sue an employer for civil penalties owed based on the employer's Labor Code violations.  *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009). Individuals have rights under California law to sue for statutory penalties or damages for Labor Code violations affecting them, but a PAGA suit is different. "*[S]tatutory* penalties provided by the Labor Code for employer wage-and-hour violations," are "recoverable directly by employees;" PAGA authorizes suits only for "*civil* penalties," which, outside of PAGA, are "enforceable only by the State's labor law enforcement agencies."  *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365, 377 (2005) (emphasis added).

The Act was motivated by the California legislature's recognition that

> adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts.

*Arias*, 46 Cal. 4th at 980.  The Act thus allows "an aggrieved employee on behalf of himself or herself and other current or former employees" to file suit to recover civil penalties.  Cal. Lab. Code § 2699(a).

The Act establishes a procedural framework to ensure that the LWDA "retain[s] primacy" over PAGA claims.  *Arias*, 46 Cal. 4th at 980.  The aggrieved employee must first "give written notice by certified mail to the [LWDA] and the employer of the specific provisions … alleged to have been violated."  Cal. Lab. Code § 2699.3(a)(1).  The agency must then notify the employer and the aggrieved employee if it does not intend to investigate the alleged violations, or if it has determined that no citation will be issued.  Cal. Lab. Code § 2699.3(a)(2)(B)-(C).  Only upon receiving such notice may the aggrieved employee commence a PAGA suit.  *Id.*  Any civil penalties recovered in a PAGA suit are "distributed as follows: 75 percent to the Labor and Workforce Development Agency … and 25 percent to the aggrieved employees."  Cal. Lab. Code § 2699(i).

The California Supreme Court has left no doubt that plaintiffs bringing PAGA claims stand in the shoes of the LWDA.  The plaintiff in a PAGA suit "acts as the proxy or agent of state labor law enforcement agencies, representing *the same legal right and interest as those agencies*, in a proceeding that is designed to protect the public, not to benefit private parties."  *Amalgamated Transit Union, Local 1756 v. Superior Court*, 46 Cal. 4th 993, 1003 (2009) (emphasis added).

Indeed, the California Supreme Court has explicitly rejected the notion that a PAGA claim asserts the substantive right of any individual employee:  the Act "does not create property rights or any other substantive rights" for aggrieved employees. *Id.* Instead, "[i]t is simply a procedural statute allowing an aggrieved employee to recover civil penalties—for Labor Code violations—that otherwise would be sought by state labor law enforcement agencies." *Id.*  Emphasizing that the "right" at issue in a PAGA suit is not individual, the California Supreme Court has observed that  "an aggrieved employee cannot assign a [PAGA claim] because the employee does not own an assignable interest." *Id.* at 1003.

All of the focus on the *public* not *individual* rights at stake is critical for PAGA to serve its function. If individuals entitled to bring PAGA suits are to carry out the State's interest in enforcement of the Labor Code, individual PAGA suits must be able to have the same effect as a State enforcement action. That is, PAGA suits, validly brought by an individual employee, must be able to impose civil penalties for violations that they uncover, regardless of whether the other employees affected were parties to the suit, or even know about it. California courts have thus emphasized the important binding effect of a PAGA suit, observing that because a PAGA suit "functions as a substitute for an action brought by the government itself," "a judgment in an employee's action under the act binds not only that employee but also the state labor law enforcement agencies," as well

6

as "all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Arias*, 46 Cal. 4th at 986.

### B. The Complaint and Removal Proceedings

Urbino was allegedly employed by Defendants from 2005 to July 8, 2010. R30-31 ¶ 4.[1] Urbino alleges various violations of the Labor Code by Defendants: that "Defendants did not pay him overtime wages for hours worked more than 8 hours in a work-day bonuses [sic]," that Urbino "had vacation wages … not paid at the end of his employment," that Defendants did not pay him "all meal period wages when owed and did not provide meal periods as required by Labor Code § 226.7," that Defendants "did not keep accurate records of hours worked [and] wages paid," and that Defendants "failed to provide accurate wage statements." R33 ¶ 16.

Urbino sought relief *only* pursuant to PAGA. He initiated this suit "as an aggrieved employee, on behalf of himself and other current or former employees pursuant to the procedures specified in [Labor Code] Section 2699.3" in order to "seek[] recovery of all applicable civil penalties for Defendants' violation of [the] Labor Code." R34 ¶ 17; *see also* R34-35 ¶ 18 (listing civil penalties that Urbino seeks). While the California Supreme Court has held that representative PAGA actions may, but need not, be brought as class actions, *Arias*, 46 Cal. 4th at 981,

_____

[1] Record cites ("R__") are to the Excerpts of Record filed in Case No. 12-55064.

Urbino has expressly brought his PAGA suit as an individual only, and not as a class action.

Urbino had originally filed suit in state court, and the defendants removed. There is no dispute that the parties are of diverse citizenship. Plaintiff John Urbino is domiciled in, and thus a citizen of, California. R40-41 ¶¶ 14-16; R.29-35. Orkin and Rollins are both incorporated in Delaware and have their principal places of business in Atlanta, Georgia. R41 ¶¶ 17-18; R45 ¶¶ 2-5. The Complaint does not allege an amount in controversy. R5. In support of removal, Defendants submitted evidence that the violations alleged in Urbino's complaint would, if proved, give rise to civil penalties for Orkin's purported labor code violations as to 811 nonexempt Orkin employees, who were issued at least 17,182 paychecks for the time at issue in this litigation. *See* R38-39 ¶ 6; R6-7. Urbino seeks $500 in civil penalties per aggrieved employee for alleged initial violations of Labor Code §§ 2699(f), 558(a)(1), 226.3, and 1197.1(a)(1), for a total of $405,500. *See* R34-35 ¶ 18; R38-39 ¶ 6; *see also* R6 & n.4. He further seeks $550 in civil penalties for alleged subsequent violations of Labor Code §§ 2699(f), 558(a)(2), and 1197.1(a)(2), for a total of $9,004,050. R34-35 ¶ 18; R38-39 ¶ 6; *see also* R6-7 & n.5. Combined, Urbino seeks potential civil penalties of $9,409,550.

The district court denied Urbino's motion to remand, concluding that the total amount of civil penalties Urbino's complaint placed in controversy was the

relevant amount for jurisdictional purposes because a PAGA suit's claim for penalties is a "common and undivided" one—*i.e.*, the LWDA's claim. R14-15. The parties also disputed whether Urbino's claim was subject to arbitration. After the district court denied the defendants' motion to compel arbitration, these appeals followed, presenting both the jurisdictional and arbitration issues.

### C.    The Panel Ruling

The panel reached only the jurisdictional issue, ruling, by a 2-1 vote, that only the amount of civil penalties attributable to Urbino's employment history could be counted toward the jurisdictional amount in controversy. The panel majority acknowledged that if the total amount of civil penalties in a PAGA suit reflects a "common and undivided interest," then the amount in controversy exceeds the jurisdictional minimum. Op. 7-8, *citing Snyder v. Harris*, 394 U.S. 332, 339 (1969). The panel emphasized that the Labor Code's rights are possessed individually by employees, not as a group. Op. 8. Turning to PAGA, under which this individual suit was brought, the panel stated only, "To the extent Plaintiff can—and does—assert anything but his individual interest, however, we are unpersuaded that such a suit, the primary benefit of which will inure to the state, satisfies the requirements of federal diversity jurisdiction. The state, as the real party in interest, is not a 'citizen' for diversity purposes." *Id.*

9

Judge Thomas dissented. Judge Thomas focused on the California decisions that emphasize that the individual suing under PAGA is not asserting his own rights, but rather the right of the state in enforcing the Labor Code, thus making clear that California treats the rights asserted under PAGA as collective and not individual. Op. 10-11. He also observed that an individual is not even allowed to pursue a PAGA claim until the state declines to seek civil penalties itself, and that individuals have no right to assign a PAGA claim; these legal constraints further indicate that there is no individual right at stake in a PAGA suit. Op. 11. Judge Thomas also observed that it was particularly "important[]" that California law treats a single PAGA action brought by one employee as binding on all the aggrieved employees at issue. Op. 11-12. If, as the panel majority ruled, a PAGA claim involved the individual rights of each employee, extinguishing those rights in a suit over which they had no control, no notice, and no opportunity to opt out "would raise serious due process concerns." Op. 12.

## REASONS FOR GRANTING THE PETITION

### THE PANEL'S INTERPRETATION RENDERS PAGA, AS CONCLUSIVELY INTERPRETED BY THE CALIFORNIA SUPREME COURT, UNCONSTITUTIONAL.

"'The fundamental requisite of due process of law is the opportunity to be heard.'" *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). Thus, in a non-class

proceeding, one's rights cannot, consistent with due process principles, be affected "by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry v. Lee*, 311 U.S. 32, 40 (1940). Indeed, even in a class action—which Urbino maintains this is not—absent class members' legal rights can be affected only if absent class members are adequately represented, and are provided with notice of the litigation and an opportunity to opt out. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

These principles are the bedrock of due process. They have repeatedly been reaffirmed, and the Supreme Court has declared that there are only a few limited circumstances in which a judgment may have preclusive effect on the individual rights of those who were not parties to the proceedings or were not a member of a class who had been given notice and an opportunity to opt out. *Taylor v. Sturgell*, 553 U.S. 880, 892–95 (2008) (listing circumstances in which preclusion of non-party claims may apply and rejecting amorphous standard that would allow one party to serve as the "virtual representative" of a non-party). None of those circumstances are present here.

The panel majority simply disregarded the necessary due process implications of its ruling. It ruled that employees filing suit under PAGA are vindicating an individual right. But it did not and could not deny that, in the

11

California Supreme Court's binding interpretation, a PAGA action has preclusive effect on *all* employees whose alleged Labor Code violations are adjudicated in the suit. Those other employees, who are not parties to the suit, and who need not have been provided any notice of the suit, lose their supposedly "individual" right to sue under PAGA once a cohort adjudicates his or her supposedly "individual" PAGA claim. So the panel majority correctly observed that a PAGA action can proceed "without the involvement of other employees," Op. 8, but it overlooked the import of that fact. One employee's individual PAGA action resolves the PAGA claims of all employees. The California Supreme Court has been absolutely clear on this point: "a judgment in an employee's action under [PAGA] binds not only that employee but also the state labor law enforcement agencies," as well as "all those, *including nonparty aggrieved employees*, who would be bound by a judgment in an action brought by the government." *Arias*, 46 Cal. 4th at 986 (emphasis added).

The panel majority's view of PAGA claims as involving individual rights thus cannot coexist with the California Supreme Court's view that a single PAGA action binds all allegedly aggrieved employees, including nonparties. One or the other of those courts must be wrong as a matter of due process. As between this Court and the California Supreme Court, the California Supreme Court's interpretation of California state law must prevail.

Moreover, construing PAGA to involve an individual right, as the panel majority has—which is contrary to the explicit statements of the California Supreme Court—will disable PAGA from serving the purpose for which it was enacted: to supplement the limited enforcement resources of the LWDA by providing an incentive for private parties entitled to sue on behalf of other employees. It is therefore critical that this Court correct the panel majority's error to ensure that a federal court ruling does not needlessly defeat an important state policy of California.

As the California Supreme Court has noted, PAGA was enacted in response to inadequate funding for the LWDA to enforce the Labor Code. *Arias*, 46 Cal. 4th at 980. The whole point of the statute is to encourage enforcement by employees over and above the encouragement the law already provides by virtue of employees' right to bring suit for damages and other penalties for violations particular to them. That is, individuals have long had the right in California to seek redress for their individual rights to overtime wages, meal time, and various other rights they possess under the Labor Code. A PAGA suit promotes more widespread enforcement by employees precisely because it fills the role traditional filled by the state: a suit enforcing Labor Code requirements (not individual employees' rights) against an employer as to an entire class of employees.

13

This distinct feature of PAGA—enforcement by individual employees of the Labor Code for the benefit of employees in general—vanishes in light of the panel's ruling. That is because there cannot be enforcement by an individual employee for the benefit of employees in general *unless* the individual employee's suit can conclusively resolve the rights of all allegedly aggrieved employees. PAGA's purpose of mimicking public enforcement of the Labor Code is achieved only if one employee's successful PAGA claim can result in the award of civil penalties based on Labor Code violations related to all employees and if, likewise, one employee's *unsuccessful* PAGA claim extinguishes other PAGA claims. If, as follows from the panel majority's opinion, each employee can win civil penalties for those Labor Code violations associated with the individual employee's employment, then the purpose of PAGA is defeated. In short, by disregarding the binding rulings of the California Supreme Court, the panel nullified a duly enacted state law.

The panel majority's suggestion that the state is the "real party in interest" fares no better. Op. 8. Indeed, the whole point of PAGA is that the state LWDA has declined to be the real party. The case is not brought in the name of the State, as the caption well indicates. To the contrary, a PAGA suit cannot be brought until the state decides *not* to be the real party. Cal. Lab. Code § 2699.3(a)(2)(B)-(C). When the LWDA sues, it does not sue under PAGA and employees collect none of

the penalties rather than the 25% of penalties the collect in a PAGA suit. California has chosen to encourage and empower individuals, who are undeniably "citizens" under the diversity statute, to bring these suits. To pretend as if the state itself has sued is to imagine that PAGA was not enacted at all, and that the state is the only party authorized to seek civil penalties.

In the end, there is only one way to make PAGA achieve its purpose and respect the fundamental due process principles that the panel majority overlooked. PAGA claims must be understood as assertions by private parties of the collective interest in enforcement of the Labor Code, not the individual right of the particular employee who chooses to sue. Judge Thomas's dissent ably recites the numerous occasions that the California Supreme Court has made this point expressly. Op. 10-11. PAGA claimants "represent[] the same legal right and interest as state labor law enforcement agencies—namely, recovery of civil penalties that otherwise would have been assessed and collected by the [State]." *Arias*, 209 P.3d at 933. The California Supreme Court has rejected the notion that a PAGA claim asserts the substantive right of any individual employee:  the Act "does not create property rights or any other substantive rights" for aggrieved employees. *Amalgamated Transit Union, Local 1756*, 46 Cal. 4th at 1003.  Instead, "[i]t is simply a procedural statute allowing an aggrieved employee to recover civil penalties—for Labor Code violations—that otherwise would be sought by state labor law

15

enforcement agencies." *Id.* The fact that a particular employee benefits from enforcement of the Labor Code in a PAGA action does not create a right, but is, according to the California Supreme Court, "ancillary to the primary object of the action." *Arias*, 46 Cal. 4th at 987 n.7.

If the California Supreme Court's own characterization of the interest at issue in a PAGA action is respected, if PAGA is treated as a suit that seeks to vindicate the collective interest of all employees in the enforcement of the Labor Code, the constitutional infirmity created by the panel majority vanishes. PAGA can continue to serve the purpose for which it was enacted, and this case was properly removed to federal court because the amount in controversy would be the entire $9,004,050 that was put at issue by the complaint.

## CONCLUSION

For the foregoing reasons, the petition for rehearing en banc should be granted.

Respectfully submitted,

s/ Robert N. Hochman

| | |
|---|---|
| John E. Lattin | Robert N. Hochman |
| FISHER & PHILLIPS LLP | Theodore R. Scarborough |
| 2050 Main Street, Suite 1000 | Tacy F. Flint |
| Irvine, CA 92614 | SIDLEY AUSTIN LLP |
| (949) 851-2424 | One South Dearborn |
| | Chicago, IL 60603 |
| Christopher C. Hoffman | (312) 853-7000 |
| FISHER & PHILLIPS LLP | |
| 4747 Executive Drive, Suite 1000 | |
| San Diego, CA 92121-1095 | |
| (858) 597-9600 | |

*Attorneys for Orkin Services of California, Inc. and Rollins, Inc.*

**CERTIFICATE OF COMPLIANCE PURSUANT TO CIRCUIT RULE 40-1**

I certify that pursuant to Circuit Rule 40-1, the attached petition for

rehearing en banc is proportionately spaced, has typeface of 14 points or more, and

contains 3,778 words, according to the word count function of Microsoft Word.


Dated: August 27, 2013

s/ Robert N. Hochman
Robert N. Hochman
*Attorney for Orkin Services of*
*California, Inc. and Rollins, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Ninth Circuit by using the

appellate CM/ECF system on August 27, 2013.

Participants in the case who are registered CM/ECF users will be served by

the appellate CM/ECF system.

Dated: August 27, 2013

s/ Robert N. Hochman
Robert N. Hochman
*Attorney for Orkin Services of*
*California, Inc. and Rollins, Inc.*